**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Heather Y. Harper, Jovanni Giuseppe Whyte-Bey,<br><br>Plaintiffs,<br><br>-v-<br><br>Bank of New York, Carrington Mortgage Services, LLC LOGS Legal Group LLP, Thomas F. Whelan,<br><br>Defendants. | 2:25-cv-1573<br>(NJC) (SIL) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

Plaintiffs Heather Y. Harper and Jovanni Giuseppe Whyte-By (together "Plaintiffs"), proceeding pro se, bring this action against the Bank of New York, as Trustee for the Certificate holders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-6 ("BNY") and Carrington Mortgage Services, LLC ("Carrington") (together, the "Bank Defendants"), as well as LOGS Legal Group LLP ("LOGS"), and the Honorable Judge Thomas F. Whelan ("Judge Whelan") (collectively, "Defendants"), seeking damages as well as declaratory and injunctive relief relating to the alleged wrongful foreclosure of property located at 25 Grant Street, Amityville, New York 11701 (the "Property"). (Am. Compl., ECF No. 24.)

Before the Court are motions to dismiss ("Motions") the Amended Complaint by (1) Judge Whelan (Whelan Mot., ECF No. 28-2), (2) LOGS (LOGS Mot., ECF No. 30), and (3) the Bank Defendants (Bank Mot., ECF No. 31). The Motions seek dismissal of this action for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim pursuant to

1

Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

For the reasons stated below, the Court grants Defendants' Motions and dismisses the Amended Complaint in its entirety.[1]

## FACTUAL BACKGROUND

In resolving the pending Motions, the Court accepts as true the factual allegations in the Amended Complaint and draws all reasonable inferences in Plaintiffs' favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). In resolving a motion to dismiss, a court may consider documents that are attached to the complaint, incorporated by reference in the complaint, integral to the complaint, or otherwise the subject of judicial notice. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023). Thus, the Court takes judicial notice of the State Court docket in *Bank of New York v. Harper*, Index No. 24566/2007, New York State Supreme Court, Suffolk County.

On March 10, 2006, Harper executed a Mortgage loan in the amount of $300,000 with respect to the Property. (*See* Bank Decl., Ex. A ("Mortgage"), ECF No. 31-3 at 5–18.)[2] The Mortgage provides that the lender is America's Wholesale Lender and that Mortgage Electronic Registration System ("MERS") is the Mortgagee of record. (*Id.* at 5.) The Mortgage was recorded in the Suffolk County Clerk's Office on May 18, 2006. (*Id.* at 2.)

---

[1] In light of the dismissal of this action, Plaintiffs' pending "Omnibus Motion To Expedite The Proceedings And Request For Injunctive Relief With Demand For Discovery For Defendants Breach Of Stipulation Of Settlement Agreement" is dismissed as moot. (ECF No. 43.)

[2] The Court refers to the relevant electronic document filing system (ECF) pagination numbers throughout this Order.

Harper "pledged a Constructive Deed of Trust granting Legal Title to [BNY] as Trustee." (Am. Compl. ¶ CXI.) On or before the closing date of the Trust, Harper's Note was sold to the Trust; however, there was no contemporaneous assignment of the deed at that time. (*Id.* ¶¶ CXIII–IV, CXVI.) An assignment of the deed of trust to BNY "was executed by an Attorney-in-fact for Federal Deposit Insurance Corporation without disclosing their true employment with the Assignee" and occurred one year after the closing date in violation of the terms of the Trust, making it void. (*Id.* ¶¶ CXVII, CXVI, CXIX.)

Harper defaulted on the Loan on May 1, 2006 and never made any further payments. (*See* Bank Decl., Ex. B ("Foreclosure Action Complaint"), ECF No. 31-4 at 16.)

## I.      Foreclosure Action

Nearly nineteen years ago, on April 9, 2007, BNY, as Trustee, commenced a foreclosure action (the "Foreclosure Action") against Harper in the New York State Supreme Court, Suffolk County ("State Court"). (*See id.*) More than a decade later, on July 13, 2022, BNY, as Trustee, represented by Davidson Fink LLP, moved for a judgment of foreclosure and sale with respect to the Property. (*See* Bank Decl., Ex. D ("Judgment of Foreclosure and Sale"), ECF No. 31-6).

On August 26, 2022, Harper's attorney, Dustin Bowman, filed an order to show cause seeking to withdraw as her attorney. (*See* Am. Compl. ¶ XIV; Judgment of Foreclosure and Sale at 6.) According to the Amended Complaint, after being paid in full, Bowman failed to appear for a scheduled hearing for which Harper was sanctioned. (*See* Am. Compl. ¶ XIV.) On October 27, 2022, Judge Whelan granted Bowman's request for recusal and granted Harper a 30-day stay to obtain new counsel. (*See id.* ¶ XXIII; Whelan Decl., Ex. 2 ("Oct. 27, 2022 Order"), ECF No. 28-5.) Harper did not retain new counsel and was deemed to be proceeding pro se. (*See* Judgment of Foreclosure and Sale at 6.) While the order to show cause was pending, Harper acting not

through an attorney, but through Whyte-Bey as an "attorney-in-fact," moved separately to cancel the notice of pendency and for dismissal of the Foreclosure Action. (*See id.*) Subsequently, BNY moved to strike the pleadings filed by non-attorney Whyte-Bey. (*Id.*)

On November 2, 2023, Judge Whelan issued a Decision and Order ruling on the pending motions. (*Id.* at 4–7.) First, Judge Whelan denied Harper's motion to cancel the notice of pendency. (*Id.* at 5.) Next, Judge Whelan denied Harper's cross-motion for dismissal and entered an order granting a Judgment of Foreclosure and Sale. (*See id.*) Additionally, Judge Whelan struck all pleadings filed by Whyte-Bey in which he signed as an attorney-in-fact, finding that his filings amounted to the unauthorized practice of law. (*Id.* at 5–7.) The Judgment of Foreclosure and Sale was entered on November 27, 2023. (*Id.* at 2.) On November 30, 2023, Harper filed a notice of appeal from the Judgment of Foreclosure and Sale, which was subsequently denied by the Appellate Division, Second Department, on February 16, 2024. *See Harper*, Index No. 024566/2007, Dkt. No. 109; *Bank of New York, v. Harper*, No. 2023-11880 (N.Y.S.2d Feb. 16, 2024.)

Almost one year later, on November 5, 2024, LOGS was substituted as counsel for the Bank Defendants. (*See id.*, Dkt. No. 114.) On November 25, 2024, LOGS, acting on behalf of BNY, moved for an extension of time to conduct a foreclosure sale ("Motion to Extend"), which Harper opposed on December 10, 2024. (*See* LOGS Mot., Ex. E, ("Jan. 28, 2025 Order"), ECF No. 30 at 66–67; *see also Harper*, Index No. 024566/2007, Dkt. Nos. 118, 123.) On January 28, 2025, Judge Whelan issued an Order granting the Motion to Extend and directed that the foreclosure sale take place within 90 days. (Jan. 28, 2025 Order.)

On February 4, 2025, Harper filed a "Motion for Renewal with Dismissal," which BNY opposed on February 19, 2025. *See Harper*, Index No. 024566/2007, Dkt. Nos. 136–143, 144.

4

On February 27, 2025, Harper filed an affirmation in response to BNY's opposition seeking counterclaims for wrongful foreclosure, lack of standing, breach of contract, slander of title, a temporary restraining order, and an order vacating the Judgment of Foreclosure and Sale. (*Id.*, Dkt. Nos. 148–149.) On March 5, 2025, Harper filed an "Emergency Motion to Compel" with respect to her "Motion for Renewal with Dismissal." (*Id.*, Dkt. Nos. 151–54.) BNY opposed the "Emergency Motion to Compel" on March 28, 2025. (*Id.*, Dkt No. 167.) At the time of the filing of the instant action, the State Court had not yet ruled on Harper's "Motion for Renewal with Dismissal," and the Property had not yet been sold.[3]

On March 21, 2025, the same day on which Plaintiffs filed the instant action, Harper filed a Notice of Removal to remove the post-judgment Foreclosure Action to this Court. (*See Bank of New York ex rel. Certificate Holders of CWABS, Inc. v. Harper*, No. 22-cv-1565, 2025 WL 1371818, at *2 (E.D.N.Y. May 12, 2025).) On May 12, 2025, this Court denied Harper's Notice of Removal as it was untimely under 28 U.S.C. § 1446(b)(1) given that it sought to remove the Foreclosure Action to this Court almost eighteen years after it was filed, which is clearly outside the 30-day period prescribed by 28 U.S.C. § 1446(b)(1). (*See id.*) Additionally, the Court found that Harper did not indicate whether the other Defendants "join[] in or consent" to the removal of this action as required by 28 U.S.C. § 1446(b)(2)(A). (*Id.*) Finally, the Court noted that in addition to the procedural deficiencies with Harper's notice of removal, she also failed to properly invoke this Court's subject matter jurisdiction as she improperly relied on "her alleged federal defenses or counterclaims" as the basis for jurisdiction. (*Id.*) Accordingly, the Foreclosure Action was remanded back to State Court. (*Id.*)

---

[3] According to the State Court docket, the Property was sold at auction on February 2, 2026. *See Harper*, Index No. 024566/2007, Dkt. No. 250.

## II.    Bankruptcy Action

On December 14, 2023, Harper filed a Chapter 13 Bankruptcy petition in the Eastern District of Virginia. *See In re: Heather Yvonne Harper*, No. 3:23-bk-34272 (E.D. Va.), ECF No. 1. On August 9, 2024, Harper proposed a Chapter 13 Plan or Reorganization that surrendered Harper's interest in the Property. (*See* LOGS Mot., Ex. C, ECF No. 30 at 50–61.) On October 3, 2024, the Bankruptcy Court issued an order that confirmed Harper's proposed plan. (*Id.*, Ex. D, ECF No. 30 at 62–64.) The Bankruptcy case is still ongoing.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on March 21, 2025. (*See* Compl., ECF No. 1.) On April 11 and April 15, 2025, Defendants submitted pre-motion letters in anticipation of filing motions to dismiss Plaintiffs' Complaint. (*See* ECF Nos. 10, 16, 18.) On April 16, 2025, the Court waived the pre-motion conference requirement, granted Plaintiffs an opportunity to amend the Complaint, and set a briefing schedule for the anticipated motions to dismiss. (*See* Elec. Order, April 16, 2025.)

On May 1, 2025, Plaintiffs filed an Amended Complaint. (*See* Am. Compl., ECF No. 24.) Liberally construing pro se Plaintiffs' Amended Complaint, counts one, two and three assert claims under the U.S. Constitution and the New York Constitution against Judge Whelan for alleged civil rights violations pursuant to 42 U.S.C. § 1983. (*See id.* ¶¶ CXXV–CLIV.) Counts four and five assert claims against the Bank Defendants and LOGS for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* (*See id.* ¶¶ CLV–CLXIX.) Additionally, counts six, seven, and eight assert claims for injunctive and declaratory relief as well as claims under New York common law for

6

negligence and intentional infliction of emotional distress.[4] (*See id.* ¶¶ CLXX–CXCI.) The Amended Complaint also seeks compensatory and punitive damages as well as attorneys' fees. (*See id.* at 53–54.)

On May 27, 2025, Judge Whelan filed his Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(5) and 12(b)(6) and a declaration with supporting exhibits (ECF Nos. 28-3 through 28-8); the Bank Defendants filed their Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(5) and 12(b)(6) and a declaration with supporting exhibits (ECF Nos. 31-2 through 31-13); and LOGS filed its Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(5) and 12(b)(6) ("LOGS Mot.") with supporting exhibits. (ECF No. 30.) On June 6, 2025, Plaintiffs filed a single opposition to all three Motions. (Opp'n, ECF No. 35.) On July 1, 2025, Judge Whelan filed a reply in further support of his Motion (Whelan Reply, ECF No. 37); LOGS filed a reply in further support of its Motion (LOGS Reply, ECF No. 36); and the Bank Defendants filed a reply in further support of their Motion (Bank Reply, ECF No. 39).

## LEGAL STANDARDS

This Court is required to construe pleadings "filed by pro se litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023).[5] "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019). Nevertheless, pro se status "does not exempt a party from compliance with

---

[4] The Amended Complaint includes two claims labeled "count six": a claim for injunctive relief (*see* Am. Compl. ¶¶ CLXX-CLXXV) as well as a claim for negligence. (*See* CLXXVI-CLXXIX.)

[5] Unless otherwise indicated, referenced quotations omit all internal quotation marks, citations, footnotes, and alterations.

relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 09-cv-2321, 2010 WL 1633440, at \*2 (E.D.N.Y. Apr. 19, 2010); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).

## I.        Fed. R. Civ. P. 12(b)(1)

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Russo v. United States*, No. 22-1869-cv, 2024 WL 726884, at \*1 (2d Cir. Feb. 22, 2024) (citing *Green v. Dep't of Educ. of the City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A court considers a Rule 12(b)(1) challenge before other arguments for dismissal because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and objections moot. *See Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v. City of New York*, No. 11-cv-3234, 2013 WL 145747, at \*5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction."). When a party raises a facial challenge to the court's subject matter jurisdiction, "the plaintiff has no evidentiary burden"; the district court need only "determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). In assessing a facial

challenge to standing, a court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

When a party has placed jurisdictional facts into dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," however, "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441–42 (2d Cir. 2022). When the extrinsic evidence "reveals the existence of factual problems," the plaintiff "will need to come forward with evidence controverting that presented by the defendant" regarding standing. *Lugo*, 114 F.4th at 87. "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243; *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017) (same). "[I]f the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," the plaintiffs "are entitled to rely" on the complaint's allegations. *Carter*, 822 F.3d at 57.

## II.    Fed. R. Civ. P. 12(b)(5)

"[T]o survive a motion to dismiss based on . . . insufficient service of process" pursuant to Rule 12(b)(5), "the plaintiff[s] must demonstrate that [they] adequately served the defendants." *Buon v. Spindler*, 65 F.4th 64, 73 (2d Cir. 2023). In doing so, the "plaintiff bears the burden of establishing that service was sufficient." *See Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[] to

matters outside the complaint to determine whether it has jurisdiction." *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 (E.D.N.Y. 2021).

When deciding a Rule 12(b)(5) motion, the court must consider the timeliness of service, which is governed by Rule 4(m). Rule 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4.

### III.    Fed. R. Civ. P. 12(b)(6)

To avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Protection USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

10

action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

Collectively, Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction, insufficient service of process, and for failure to state a claim pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.

Specifically, Judge Whelan contends that the claims against him are barred under the doctrines of judicial immunity and Eleventh Amendment sovereign immunity. (Whelan Mot. at 6–10.) He further argues that the Court lacks subject matter jurisdiction over Plaintiffs' claims against him pursuant to the *Rooker-Feldman* doctrine. (*Id.* at 10–11.) Additionally, Judge Whelan argues that the Court lacks personal jurisdiction over him due to insufficient service of process of the Amended Complaint, and that in any event, the Amended Complaint fails to state a claim against him under Rule 12(b)(6). (*Id.* at 12–14.)

The Bank Defendants contend that the court lacks subject matter jurisdiction over Plaintiffs' claims against them under the *Rooker-Feldman* doctrine. (Bank Mot. at 9–12.) They also move for dismissal on the basis that the Amended Complaint is barred by res judicata and fails to state any plausible claims against them (*id.* at 7–9, 11–21), and that Plaintiffs failed to serve process in accordance with Federal Rule 4 (*id.* at 21–25).

LOGS contends that this Court lacks subject matter jurisdiction over Plaintiffs' claims pursuant to *Rooker-Feldman*. (LOGS Mot. at 22–25.) It also argues that dismissal is warranted due to insufficient service of process and that the claims against LOGS are barred by doctrines of res judicata and collateral estoppel. (*Id.* at 20–24.) Finally, LOGS argues that because there is no diversity jurisdiction and the Amended Complaint fails to survive Rule 12(b)(6), the Court

11

should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.[6] (*Id.* at 19–20.)

For the reasons discussed below, the Court grants Defendants' Motions and dismisses the Amended Complaint in its entirety.

## I.        Claims Against Judge Whelan

Judge Whelan first moves to dismiss Plaintiffs' claims against him for lack of subject matter jurisdiction on the grounds that these claims are barred by judicial immunity and Eleventh Amendment immunity.[7] (*See* Whelan Mot. at 6–10.) For the reasons discussed below, the Court agrees. All claims against Judge Whelan are dismissed for lack of subject matter jurisdiction.

### A.  Judicial Immunity

It is well-established that judges have absolute judicial immunity from suit for judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *accord Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) ("Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.'" (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985))). "[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *See Brady v. Ostrager*, 834 F. App'x 616, 618 (2d Cir. 2020) (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). Thus, judges are absolutely immune from damages claims

---

[6] LOGS additionally argues that Plaintiffs' claims are barred by Harper's surrender of the Property in the Bankruptcy case. (*See* LOGS Mot. at 21.) Because the Court dismisses Plaintiffs' claims against LOGS on the grounds addressed below, it need not rule on this issue.

[7] Judge Whelan also moves for dismissal pursuant to *Rooker-Feldman*, for insufficient service of process, and for failure to state a claim. (Whelan Mot. at 10–14.) This Court does not reach these issues because this Court lacks subject matter jurisdiction pursuant to Eleventh Amendment immunity and judicial immunity.

against any actions taken within the scope of their judicial responsibilities. *Bliven*, 579 F.3d at 209 (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judicial officer be deprived of immunity "because the action he took was in error . . . or was in excess of his authority." *Mireles*, 502 U.S. at 11, 13 (1991) (internal quotation marks and citations omitted); *accord Davis v. Gillespie*, No. 22-cv-6207, 2023 WL 5002553, at *5 (E.D.N.Y. Aug. 4, 2023) ("Judicial acts—even if they are alleged to have been done maliciously or corruptly—are not subject to civil liability.").

Here, the Amended Complaint's claims against Judge Whelan all concern official actions that he did or did not take during the Foreclosure Action. Indeed, the Amended Complaint asserts that Plaintiffs' claims relate to Judge Whelan's "position as a SUPREME COURT JUSTICE," and that the alleged "violations of [P]laintiff's due process rights have occurred at various junctions in the proceedings of the lower court." (Am. Compl. ¶¶ XXIX, XXXVI; *see also id.* ¶¶ XV ("Defendant Whelan issued a Decision and Order to recuse plaintiffs' counsel . . . ."), XVI ("[D]efendant Whelan . . . entered a Decision and order granting defendant Bank of New York . . . the Asset-Backed Certificates . . . ."); C ("Whelan . . . in failing to order a refund of plaintiff's retainer and legal fees in his Decision and Order . . . breached [22 NYCRR § 100.2]").) Plaintiffs assert a negligence claim against Judge Whelan for "fail[ure] to use due care in performance of [his] duties" in connection with the Foreclosure Action, specifically regarding the "Motion to Renew and Supplementary Evidence on or about February 4, 2025." (*Id.* ¶ CLXXVII.) The Amended Complaint further alleges that Judge Whelan failed to address Bowman's attempt "to double bill the plaintiffs" in his October 27, 2022 Decision and Order granting Bowman's application to recuse. (*Id.* ¶¶ XCVII–XCVIII.) Finally, Plaintiffs allege that

13

Judge Whelan "colluded to conceal fraud concerning the constitutional rights of individuals in the Foreclosure Action." (*Id.* ¶ CXXXVIII.)

On their face, Plaintiffs' claims against Judge Whelan concern official actions he took in the Foreclosure Action. Because the challenged alleged conduct is "arising out of, or related to" the Foreclosure Action, they are "considered judicial in nature." *See Brady*, 834 F. App'x at 618; *see Sage-El v. Tully*, No. 15-cv-5606, 2015 WL 6455242, at *2 (E.D.N.Y. Oct. 26, 2015) ("To the extent [the] plaintiff seeks to bring claims against the judges involved in his state court proceedings his claims must be dismissed, as judges have absolute immunity for their judicial acts performed in their judicial capacities."). These claims are barred even to the extent that they are brought against Judge Whelan in his individual capacity. *Kellogg v. Nichols*, 149 F.4th 155, 159–60 (2d Cir. 2025) (affirming absolute judicial immunity from suits against state court judge defendant in his individual capacity).

Accordingly, all claims against Judge Whelan in the Amended Complaint are barred by judicial immunity and dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

## B.  Eleventh Amendment Immunity

In addition to judicial immunity, the doctrine of sovereign immunity under the Eleventh Amendment to the United States Constitution bars the adjudication of Plaintiffs' claims against Judge Whelan.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Eleventh Amendment sovereign immunity applies not just to lawsuits filed in federal court against States themselves, but also to state officials acting in their official

capacities, including state court judges. *See Chris H. v. New York*, 740 F. App'x 740, 741 (2d Cir. 2018) (summary order). "The Eleventh Amendment bars damages actions in federal court against a state and against state officials acting in their official capacities, unless the state waives sovereign immunity or Congress abrogates it." *Id.*; *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (summary order) (dismissing claims against claims against New York judges on Eleventh Amendment immunity grounds). This bar applies suits brought in federal court against a state and its agents "regardless of the nature of the relief sought." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023), *cert. denied*, No. 22-1130, 2024 WL 674658 (U.S. Feb. 20, 2024); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim."); *see also Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d. 304, 316 (E.D.N.Y. 2014) ("[T]he Eleventh Amendment bars all suits against states in federal court based on state law, regardless of the relief sought."). Accordingly, states and their agents and instrumentalities are immune from suits seeking monetary damages and injunctive relief, *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001), as well as declaratory relief, *Ashmore v. Prus*, 510 F. App'x 47, 48 (2d Cir. 2013) (citing *Pennhurst*, 465 U.S. at 100–01); *Manners v. New York*, 175 F.3d 1008, 1999 WL 96136 at *1 (2d Cir. 1999) (summary order).

Notwithstanding the Eleventh Amendment's bar to federal actions against states and their agents and instrumentalities, a plaintiff may sue a state official acting in their official capacity "for prospective, injunctive relief from violations of federal law" under the doctrine established by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908). *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007). The *Ex parte Young* exception applies to a

15

claim against a state official when the complaint "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)) (quotation marks omitted). The *Ex parte Young* exception does not apply if a plaintiff seeks declaratory relief that "would have the same effect as an award of damages against the state." *Williams v. Marinelli*, 987 F.3d 188, 197 (2d Cir. 2021) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)); *see also Bythewood v. New York*, No. 22-2542-cv, 2023 WL 6152796, at *1 (2d Cir. Sept. 21, 2023) ("Retrospective declaratory relief cannot otherwise serve as an end run around the Eleventh Amendment's bar on retrospective awards of monetary relief."). The *Ex parte Young* exception extends only to violations of federal law, not state law. *See Pennhurst*, 465 U.S. at 120–21.

Here, the Amended Complaint's claims against Judge Whelan are barred by Eleventh Amendment immunity as Judge Whelan is a state official acting in his official capacity. *See Chris H.*, 740 F. App'x at 741; *Martin-Gibbons*, 857 F. App'x at 37 (affirming dismissal of pro se Section 1983 claims against a state court judge in his official capacity based on Eleventh Amendment immunity); *Napolitano v. Saltzman*, 315 F. App'x 351, 352 (2d Cir. 2009) (affirming dismissal of claims against state appellate judges in their official capacity pursuant to the Eleventh Amendment).

Further, the *Ex parte Young* exception does not apply to Plaintiffs' claims as they do not "allege[] an ongoing violation of federal law" or "seek[] relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618 (citing *Verizon Md.*, 535 U.S. at 645). To the extent the Amended Complaint "requests a judicial determination of the rights, obligations, and interest of the parties regarding the subject property," and that Harper "should be the

16

equitable owner of the Subject Property," (Am. Compl. ¶¶ CLXXXI–CLXXXII), Plaintiffs are clearly seeking relief for past harms. The Amended Complaint does not allege any "ongoing violation of federal law" necessary for application of the *Ex parte Young* exception. *Rowland*, 494 F.3d at 95. The *Ex parte Young* exception is not available to "a plaintiff who merely asserts she has suffered discrete acts of past discrimination." *Blamah v. New York*, No. 7:19-cv-9234, 2020 WL 1812690, at *5 (S.D.N.Y. Apr. 8, 2020); *see also JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 340 (E.D.N.Y. 2014) (holding that plaintiff seeking declaration that he was previously denied due process did not raise any ongoing violations of federal law that would permit an award of prospective relief); *Scott v. Crossway*, No. 1:22-cv-500, 2022 WL 16646531, *8 (N.D.N.Y. Nov. 3, 2022), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023) ("Plaintiff appears to be asking only for retrospective relief—that this Court determine that [the Judge]'s Decision and Order was incorrect, contrary to law, and/or unconstitutional."). Because Plaintiffs' requested relief on the claims against Judge Whelan are purely retrospective, these claims are barred by the Eleventh Amendment, and the *Ex parte Young* exception is inapplicable.

Accordingly, the Court dismisses all claims asserted against Judge Whelan in his individual and official capacities under the doctrines of judicial immunity and Eleventh Amendment immunity for lack of subject matter jurisdiction.

17

## II.    Claims Against the Bank Defendants and LOGS

### A.  Preclusion Principles[8]

The Bank Defendants and LOGS move for dismissal on the basis that the Court lacks subject matter jurisdiction over the claims against them under the *Rooker-Feldman* doctrine. (LOGS Mot. at 22–23; Bank Mot. at 9–11.) The Bank Defendants also move for dismissal on the grounds that the Amended Complaint is barred by res judicata, and LOGS also moves for dismissal under the doctrine of collateral estoppel. (LOGS Mot. at 22–23; Bank Mot. at 7–9.)

As explained below, to the extent that this action attempts to challenge the State Court's Judgment of Foreclosure and Sale, the Amended Complaint's claims against the Bank Defendants and LOGS are barred by the *Rooker-Feldman* doctrine and dismissed pursuant to Rule 12(b)(1). Additionally, the preclusion doctrines of res judicata and collateral estoppel bar the Amended Complaint's claims against the Bank Defendants and the doctrine of collateral estoppel precludes the Amended Complaint's claims against LOGS pursuant to Rule 12(b)(6).

### i.  *Rooker-Feldman*

The *Rooker-Feldman* doctrine bars federal courts from exercising "jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)). The doctrine, intended to be applied narrowly, "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments

---

[8] The Court need not address how preclusion principles apply to the state law claims of negligence and intentional infliction of emotional distress because, as discussed in Discussion Sections II.D, *infra*, the Court lacks subject matter jurisdiction over the federal claims brought in the Amended Complaint and therefore declines to exercise supplemental jurisdiction over the state law claims.

18

rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

*Rooker-Feldman* bars federal courts from reviewing not only claims that were already raised in the state court action but also claims that were not raised but are nonetheless "inextricably intertwined" with the state court judgment. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 86–87 (2d Cir. 2005). The doctrine applies when four requirements are met: (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains "of injuries caused by a state court judgment"; (3) the plaintiff invites "review and rejection of that judgment"; and (4) the state judgment was "rendered before the district court proceedings commenced." *Id.* at 85. The first and fourth requirements are "procedural," while the second and third requirements are "substantive." *Id.* While all four requirements must be met to preclude jurisdiction, "the second requirement — that the plaintiff complains of an injury *caused* by a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive." *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018) (emphasis in original). As relevant here, courts in this Circuit "have held consistently that efforts to upset a state court judgment of foreclosure are barred by the *Rooker-Feldman* doctrine." *Ozuzu v. Greenpoint Mortg. Funding*, No. 19-cv-3783, 2020 WL 5658776, at *5 (E.D.N.Y. Sept. 23, 2020); *see also Ceccarelli v. Morgan Stanley Priv. Bank, N.A.*, No. 25-443-cv, 2025 WL 2992528, at *2 (2d Cir. Oct. 24, 2025) (summary order) (affirming dismissal under *Rooker-Feldman* of claims challenging foreclosure action); *Jeffreys v. Deutsche Bank Tr. Co.*, No. 22-3059, 2024 WL 482776 (2d Cir. Feb. 8, 2024) (summary order) (same).

Here, the procedural requirements of *Rooker-Feldman*—that the federal-court plaintiff lost in state court and that the state judgment was rendered before the district court proceedings

commenced—are satisfied. Harper lost in state court when the New York State Supreme Court entered the Judgment of Foreclosure and Sale on November 27, 2023, and her appeal was denied by the Appellate Division, Second Department on February 16, 2024—well before the proceedings in this action commenced on March 21, 2025.[9]

As to the substantive requirements of *Rooker-Feldman*—whether the plaintiff complains of injuries *caused* by a state-court judgment and invites review and rejection of that judgment— the Court must evaluate each of Plaintiffs' claims in turn.

### 1. Claims for Declaratory and Injunctive Relief

On their face, Plaintiffs' sixth cause of action for injunctive relief and their eighth cause of action for declaratory relief complain of injuries caused by the Foreclosure Action and are therefore barred by *Rooker-Feldman*. (*See* Am. Compl. at 50–51.) Specifically, the Amended Complaint seeks "to quiet title," requests "a judicial declaration that . . . title to the Subject Property is vested in Plaintiff alone and that the Defendant be declared to have no interest" in the Property, and that Defendants "be forever enjoined from asserting any estate, right, title, or interest in the Subject Property subject to Plaintiff's rights." (Am. Compl. ¶ CLXXXIII.) It further requests that "Defendants and its agents and employees be enjoined from auction and sale [and] any continuance of a state claim pending trial." (*Id.* ¶ CLXXV.) Thus, it is clear from the face of the Amended Complaint that Plaintiffs seek to relitigate the very issues that the State Court decided against Harper in the Judgment of Foreclosure and Sale—precisely what *Rooker-Feldman* precludes. *See Thomas v. McCabe, Weisberg & Conway, LLC*, No. 24-cv-7504, 2025

---

[9] Although Carrington, a Defendant in this action, was not a party to the Foreclosure Action, "the *Rooker-Feldman* doctrine does not require that the federal-court defendant have been a party in the prior state court proceeding." *Best v. Bank of Am.*, No. 14-cv-6546, 2015 WL 5124463, at *3 (E.D.N.Y. Sept. 1, 2015).

WL 2588749, at *8 (S.D.N.Y. Aug. 15, 2025), *report and recommendation adopted*, No. 24-cv-07504, 2025 WL 2592351 (S.D.N.Y. Sept. 8, 2025). "If this Court were to grant Plaintiff[s] the relief [they] request[], it would necessarily be disagreeing with the State Court's prior determinations that title and ownership of the Property are vested in [BNY], not [Harper], and that [Harper] is no longer entitled to litigate these issues." *Id.*; *see also e.g., Mendez v. Pretium Mortg. Credit Partners I, Loan Acquisition, LP*, No. 21-cv-826, 2023 WL 8283148, at *4 (E.D.N.Y. Nov. 30, 2023) ("Because the state court must necessarily have ruled on the validity of the underlying loan and mortgage in rendering its decision, Plaintiff's request for this Court to review the same loan and 'nullify' it meets the substantive requirements of *Rooker-Feldman*"), *aff'd sub nom.*, *Mendez v. Pretium Mortg. Credit Partners*, No. 23-8057-cv, 2024 WL 4691006 (2d Cir. Nov. 6, 2024). Therefore, the Amended Complaint's request for declaratory and injunctive relief are barred under *Rooker-Feldman* as they seek to nullify the State Court's Judgment of Foreclosure and Sale.

Accordingly, Plaintiffs' claims for injunctive and declaratory relief are dismissed for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1).

### 2. *Consumer Protection Claims*[10]

Although the allegations are sparse, the Court liberally construes the Amended Complaint to assert claims under the consumer protection laws. Plaintiffs' TILA claim alleges that Harper served Defendants a Notice "demand[ing] defendant to make a [c]orrection of billing errors pursuant to [TILA], and more specifically, Part D of TILA, the Fair Credit Billing Act (FCBA) as codified in § 1666." (Am. Compl. ¶ CLVI.) According to the allegations of the Amended

---

[10] The Court will use the term "consumer protection claims" to refer collectively to Plaintiffs' TILA, FDCPA and FCRA claims.

Complaint, Defendants failed to correct billing errors of an unidentified nature. (*Id.* ¶¶ CLVI, CLVIII.) Additionally, Plaintiffs allege that Defendants "failed to provide a money audit trail which would have remedied the dispute as it related to plaintiff[']s real property." (*Id.* ¶ CLVII.) With respect to Plaintiffs' FCRA claim, Plaintiffs allege that Plaintiffs "[were] deprived of" the ability to "exercise [their] right to decline inaccurate reporting" and that the reports were "technically accurate," but "misleading." (*Id.* ¶ CLVII–III.)

The Amended Complaint's bare-bones allegations regarding these unidentified billing errors are clearly made in an effort to challenge the Judgment of Foreclosure and Sale. In support of their claims, Plaintiffs cite the notices of billing errors, attached as exhibits to the Amended Complaint, which Harper sent in 2024 and 2025, after issuance of the Judgment of Foreclosure and Sale. (*See* Am. Compl. ("Notices"), ECF No. 24 at 124–168.) Pointing to a January 2, 2025 "Notice of Fault and Opportunity to Cure," Harper alleges that LOGS "has failed to provide [Harper] with the original signed contract or agreement bearing Heather Y. Harper signature from the original creditor," and that LOGS' alleged failure to respond meant that "no proof of the alleged debt, nor any such debt, in fact exists." (*Id.* at 132–33.) Similarly, relying on a February 5, 2025 "Notice of Default" sent to LOGS, Harper "demand[ed] documentation to support" the Bank Defendants' "proof of claim regarding the alleged debt" in the form of "evidence for clarification of who funded this account and whose obligation it is to pay this alleged debt on this account"—determinations necessarily made by the State Court in rendering its Judgment of Foreclosure and Sale. (*Id.* at 124–25.) In the Notice of Default, Harper further demanded that "if the creditor does not provide all documentary evidence . . . this will result in a billing error and the creditor forfeits all rights to collection . . . ." (*Id.* at 125.) Harper effectively contests the

Judgment of Foreclosure and Sale by claiming that the original lender never extended credit to Harper with respect to the Property. (*Id.* at 125.)

Clearly these Notices "arise from the state court Judgment of Foreclosure and Sale, and the state court's acceptance of the validity of the mortgage documents that formed the basis for that judgment." *Craig v. Saxon Mortg. Servs., Inc.*, 13-cv-4526, 2015 WL 171234 at *6 (E.D.N.Y. Jan. 13, 2015) (plaintiff's FDCPA claim barred by Rooker-Feldman doctrine where plaintiff alleged that defendants attempted to collect a debt they had "no authority to collect" and never had "lawful authority [or] possession of [plaintiff's] [n]ote"); *Quiroz v. U.S. Bank. Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at *6 (E.D.N.Y. May 16, 2011) ("[A]ny FDCPA claim based on the falsity of the debt is barred by *Rooker-Feldman* because it would be [the state court's order of foreclosure and sale] which held [the creditor] had a valid right to collect the debt."), *report and recommendation adopted*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011). Thus, as here, where Plaintiffs' consumer protection claims "contest[] the authenticity of the underlying debt instruments and [BNY's] status as a creditor," such claims are barred by *Rooker-Feldman* because the district court "would necessarily have to review the state court judgment to adjudicate [those] claims." *See Hines v. HSBC Bank USA*, 15-cv-3082, 2016 WL 5716749 at *4–5 (E.D.N.Y. Sept. 30, 2016). Therefore, Plaintiffs' allegations that LOGS and the Bank Defendants "fail[ed] to properly disclose the security interest of the plaintiffs following a request for debt validation and audit request" are "based on the falsity of the debt" as alleged in the Amended Complaint and are therefore barred by *Rooker-Feldman*. (*See* Am. Compl. ¶ XI.)

The Amended Complaint asserts that "fraud vitiates" the "contracts, documents and even Judgments." (*Id.* ¶¶ LXXVI–LXXXV.) However, "there is no 'fraud-on-the-court' exception to the *Rooker-Feldman* doctrine." *Lorick v. Kilpatrick Townsend & Stockton LLP*, No. 18-cv-7178,

23

2021 WL 7906510, at *7 (E.D.N.Y. Aug. 20, 2021), *report and recommendation adopted*, No. 18-cv-7178, 2022 WL 1104849 (E.D.N.Y. Apr. 13, 2022). "[A] plaintiff cannot rely on allegations that the state court judgment at issue was obtained fraudulently to avoid application of that doctrine," since such an exception "would require the federal courts to review the state proceedings and determine that the . . . judgment was issued in error, which *Rooker-Feldman* instructs we cannot do." *Fiorilla v. Citigroup Glob. Mkts., Inc.*, 771 F. App'x 114, 115 (2d Cir. 2019) (quoting *Vossbrinck*, 773 F.3d at 427); *Lorick*, 2021 WL 7906510, at *7. Accordingly, in *Roberts v. Perez*, a district court found that "the detail with which Plaintiff complains of the state-court proceedings" and "the fact that Plaintiff specifically name[d] . . . state-court litigation counsel" as a defendant demonstrated an effort "to remedy harm caused by the state-court judgment . . . ." *Roberts v. Perez*, No. 13-cv-5612, 2014 WL 3883418, at *3 (S.D.N.Y. Aug. 7, 2014). Likewise, here, Plaintiffs' claims against the Bank Defendants and their counsel seek to remedy alleged harms caused by the Judgment of Foreclosure and Sale. Adjudication of these claims would require this Court to review and possibly re-adjudicate aspects of that Judgment—precisely the type of review that *Rooker-Feldman* prohibits.[11]

Accordingly, the Amended Complaint's consumer protection claims against LOGS and the Bank Defendants seek to undermine the State Court Judgment of Foreclosure and Sale. These claims are therefore barred under *Rooker-Feldman* and dismissed under Rule 12(b)(1).

---

[11] Notably, the fact that the Amended Complaint seeks compensatory and punitive damages does not bar the application of *Rooker-Feldman* where "it is abundantly clear that the whole purpose of this action is to stop and undo the foreclosure judgment." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011).

### ii. Res Judicata

"The doctrine of claim preclusion, or res judicata, bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 n.1 (2d Cir. 2015) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). "A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014). "In assessing the preclusive effect of a prior state-court judgment, [federal courts] apply the preclusion law of the state that issued the judgment." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*, 110 F.4th 106, 114 (2d Cir. 2024). As the prior decision here was rendered by a New York state court, New York's res judicata doctrine governs.

Under New York law, res judicata bars successive litigation of all claims where: (1) the previous action involved a judgment "on the merits" by a "court of competent jurisdiction"; (2) the previous action involved the "same parties" or those in privity with them; and (3) the claims asserted in the subsequent action were "actually litigated . . . [or] could have been raised in the prior litigation." *Beijing*, 110 F.4th at 114; *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 96 N.E.3d 737, 744 (N.Y. 2018). Pursuant to New York's transactional approach to res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). Claims are deemed to have been brought to a final conclusion even when they "could have been litigated [as defenses in the prior action],

25

including defenses to a foreclosure." *Id*. at 421.[12] Thus, in cases involving prior foreclosure actions, "[c]ourts in this Circuit have found that a plaintiff's federal-court claim is precluded by a state-court judgment in a foreclosure action when the plaintiff has alleged, in federal court, that the defendants acted improperly in connection with the making, validity or enforcement of the underlying mortgage." *George v. Nationstar Mortg., LLC*, No. 16-cv-261, 2017 WL 3316065, at *7 (E.D.N.Y. Aug. 2, 2017) (emphasis added). Accordingly, claims "questioning the validity of [a] plaintiff's right to seek foreclosure are sufficiently connected to the foreclosure action" to be barred by res judicata, although "[c]laims relating to a broad range of conduct . . . rather than narrowly bearing on the mortgage note itself or its enforcement, do not pass the transaction test." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 257 (D. Conn. 2017) (interpreting comparable requirements in Connecticut res judicata law).

Applying these standards here, the Court finds that res judicata bars Plaintiffs' claims against the Bank Defendants to the extent that such claims were or could have been raised in the Foreclosure Action. However, because LOGS is not in privity with the Bank Defendants, res judicata does not preclude the claims against LOGS.

The first res judicata requirement, that the previous action involved a judgment "on the merits" by a "court of competent jurisdiction," is satisfied here because Judge Whelan's

---

[12] Some judges in this District have noted that New York "has a permissive counterclaim rule" and therefore concluded that "res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 147 (E.D.N.Y. 2016) (citing B*eckford v. Citibank N.A.*, No. 00-cv-205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000)); *see also Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Prot. Dutch Church*, 502 N.E.2d 978, 981 n.2 (N.Y. 1986). However, the Second Circuit has interpreted New York's res judicata law more broadly to "apply to all claims that could have been raised in a prior proceeding" and district courts are "bound by the circuit court's interpretation of state law." *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-cv-4871, 2020 WL 1151313, at *11 (S.D.N.Y. Mar. 9, 2020) (emphasis added) (citing *Maharaj v. Bank Am. Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)).

November 27, 2023 Order granting BNY's motion for Judgment of Foreclosure and Sale operates as a judgment on the merits for res judicata purposes. *See Swiatkowski*, 745 F. Supp. 2d at 171 ("a Final Judgment of Foreclosure and Sale was a previous adjudication on the merits" for purposes of res judicata (internal quotations omitted)); *Borrani v. Nationstar Mortg. LLC*, 820 F. App'x 20, 23 (2d Cir. 2020) (holding that a grant of summary judgment in a state-court foreclosure action was a final judgment on the merits); *Manzolillo v. Nationstar Mortgage, LLC*, 765 F. Supp. 3d 157, 165 (E.D.N.Y. 2025) ("A judgment of foreclosure entered against Plaintiff is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and would disturb Defendant's ability to enforce rights provided pursuant to the mortgage and the note securing the subject property." (citation omitted)).

The second requirement, the involvement of the "same parties" or those in privity with them, is satisfied as to the Bank Defendants but not with respect to LOGS. "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, and those whose interests are represented by a party to the action.'" *Modular Devices, Inc. v. Alcatel Alenia Space Espana*, No. 08-cv-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997)). Under New York law, "the party servicing the mortgage and the party that later acquires it . . . are considered to be in privity with the party to the original action concerning the mortgage for the purposes of res judicata." *Fequiere v. Tribeca Lending*, No. 14-cv-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (finding that the defendants, who were not named in a state court foreclosure action, were in privity with the state-court plaintiff because of their alleged interests in the federal plaintiff's/state-court defendant's mortgage). *See also e.g., Yeiser*,

27

535 F. Supp. 2d at 423 (finding that loan servicing company was "in privity" with mortgage holder that had obtained judgment of foreclosure against plaintiff in state court because that company "serviced the loan at the time . . . the foreclosure action [was commenced]").

The Bank Defendants satisfy this second requirement for res judicata purposes. Here, BNY, a Defendant in the instant action, was the plaintiff in the Foreclosure Action. Though Carrington was not a named plaintiff in the Foreclosure Action, as the party servicing the mortgage, Carrington is in privity with BNY and therefore satisfies this second requirement of res judicata. *See Yeiser*, 535 F. Supp. 2d at 423.

However, as to LOGS, privity has not been established. LOGS was never a party to the Foreclosure Action and was not involved in it until it was substituted as counsel for BNY on November 5, 2024—around one year after the entry of the Judgment of Foreclosure and Sale. According to the Second Circuit, "an attorney is in privity with his client for purposes of res judicata only where the attorney 'had a *personal* interest in the subject of the earlier action.'" *Gurevitch v. Emerald Green Prop. Owners Ass'n, Inc.*, No. 23-cv-8156, 2025 WL 642347, at *7 (S.D.N.Y. Feb. 27, 2025) (emphasis added) (quoting *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022) (finding that an attorney who represented his client in a foreclosure action was not in privity with that client because he "did not have a cognizable personal interest in the subject of the state foreclosure action")). "This is the case even where the plaintiff's later claim is predicated on allegations that the counsel to the party in the prior action and that party itself were involved in misconduct." *Gurevitch*, 2025 WL 642347 at *7. LOGS has not claimed any "personal interest" in the Foreclosure Action. *See Hansen*, 52 F.4th at 101. Thus, LOGS' relationship with the Bank Defendants alone does not establish privity and res judicata does not preclude Plaintiffs' claims against LOGs.

28

Finally, the third requirement of res judicata, that the claims asserted in the subsequent action were "actually litigated . . . [or] could have been raised in the prior litigation," is satisfied here. *Beijing*, 110 F.4th at 114. The Amended Complaint seeks declaratory and injunctive relief restoring title in the Property to Harper (Am. Compl. ¶¶ CLXXI–XV, CLXXX–CLXXXIII)—an action that would directly contravene the Judgment of Foreclosure and Sale. Clearly such claims were "actually litigated" in the Foreclosure Action and are therefore barred by res judicata.

Regarding Plaintiffs' consumer protection claims, as discussed *supra*, they "contest the authenticity of the underlying debt instruments" and are therefore also barred by res judicata. *See Hines*, 2016 WL 5716749 at *4–5; *see also Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 295 (E.D.N.Y. 2024) ("While Plaintiff did not specifically raise [his Consumer Protection Claims, including claims brought under TILA and the FDCPA,] in the Second Foreclosure Action, they are nonetheless barred because they 'aris[e] out of the same transaction or series of transactions' at issue in the Second Foreclosure Action." (quoting *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 147 (E.D.N.Y. 2016))). Indeed, Harper contested the authenticity of the underlying debt in the State Court prior to the Judgment of Foreclosure and Sale, and she continues to do so through various post-judgment motions in the Foreclosure Action. For example, Harper alleges the existence of "false or fraudulent documents," that the "Note is invalid as [a] fraudulent conveyance" and a "void" assignment of the Mortgage." *Harper*, Index No. 024566/2007, Oct. 17, 2022 "Cross-motion to Dismiss," Dkt. No. 46 at 1–12. She further alleges that "[the Bank Defendants] cannot establish possession, show proper receipt, transfer, negotiations, assignment and ownership of the Tangible Note or Deed of Trust, resulting in imperfect security interests and claims; therefore, none of [the Bank Defendants] have perfected any colorable claim of title or security interest in the Real Property." *Id*. Harper also asserted

29

counterclaims in the State Court Foreclosure Action for, among other things, wrongful foreclosure, lack of standing, and an order vacating the Judgment of Foreclosure and Sale, and maintains that the "Notice of Sale should be denied as it would lead most certainly into a per say unreasonable sale of the property." *Id.*, Feb. 4, 2025 "Motion for Renewal with Dismissal," Dkt. Nos. 136–148. Indeed, Harper's State Court filings also rely on and attach the same notices of alleged billing errors that she sent to the Bank Defendants and LOGS, which Plaintiffs also attached to the Amended Complaint in this action as discussed in Discussion Section II.A.i.2 *supra*. (*See id*. Dkt. No. 149.)

"Res judicata bars the plaintiff from relitigating these same claims [here, even] under new causes of action." *Ozuzu v. Greenpoint Mortg. Funding*, No. 19-cv-03783, 2020 WL 5658776, at *10 (E.D.N.Y. Sept. 23, 2020) (holding that plaintiff's claims for violations of GBL § 349 and RICO were based on the same facts as the defenses in the underlying foreclosure action and were therefore barred by res judicata."); *see Borrani v. Nationstar Mortg. LLC*, No. 17-cv-9397, 2019 WL 1429982, at *12 (S.D.N.Y. Mar. 29, 2019), *aff'd*, 2020 WL 3721480 (2d Cir. July 7, 2020) (plaintiff's claims for violations of RICO, TILA, and RESPA were based on the same facts as the defenses in the underlying foreclosure action and were therefore barred by collateral estoppel and res judicata); *Swiatkowski*, 745 F. Supp. 2d at 172 (the plaintiff's RICO and constitutional claims were barred because they were based on "the allegation that [the] defendants improperly obtained a Judgment of Foreclosure and Sale"). Therefore, res judicata bars the Amended Complaint's claims against the Bank Defendants on the basis that such claims, though based upon different legal theories, were "actually litigated" or "could have been raised in the prior litigation." *Beijing*, 110 F.4th at 114.

30

Accordingly, the claims against the Bank Defendants are precluded by res judicata and are therefore dismissed pursuant to Rule 12(b)(6).

### iii. Collateral Estoppel

As with res judicata, the application of collateral estoppel is determined by the law of the state in which the prior decision was rendered. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Swiatkowski*, 745 F. Supp. 2d at 168 (quoting *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007)); *accord Hoblock*, 422 F.3d at 94. This doctrine prevents a party from re-litigating an issue "clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." *Wilson v. HSBC Bank, USA*, No. 16-cv-8405, 2018 WL 1449204, at *10 (S.D.N.Y. Mar. 22, 2018) (internal quotation marks and citation omitted; ellipsis in original). "Collateral estoppel generally does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 350 (E.D.N.Y. 2010) (citing *United States v. Mendoza*, 464 U.S. 154, 158 (1984)). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991).

Notably, in cases involving prior foreclosure actions, "[c]ourts in this Circuit have found that a plaintiff's federal-court claim is precluded by a state-court judgment in a foreclosure action

31

Case 2:25-cv-01573-NJC-SIL   Document 46   Filed 04/30/26   Page 32 of 52 PageID #: 1595

when the plaintiff has alleged, in federal court, that the defendants acted improperly in connection with the making, validity or enforcement of the underlying mortgage." *George v. Nationstar Mortg., LLC*, No. 16-cv-261, 2017 WL 3316065, at *7 (E.D.N.Y. Aug. 2, 2017) (citing *Fequiere v. Tribeca Lending*, No. 14-cv-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (holding that where the plaintiff attacked the validity of the underlying mortgage and the propriety of the foreclosure action in state court, she could not recast the same factual allegations to support claims under racketeering and state statutes in federal court)). These courts have reasoned that the federal court plaintiff could have raised the claims concerning improper conduct and/or fraud in the making, validity, or enforcement of the underlying mortgage as a defense to in the underlying foreclosure action. *See, e.g.*, *Solomon v. Ocwen Loan Servicing, LLC*, No. 12-cv-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); *Hinds v. Option One Mortg. Corp.*, No. 11-cv-6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (res judicata barred fraud claim premised on "allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud" because the claims "arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"); *see also Swiatkowski*, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings.").

Although Carrington and LOGS were not parties in the Foreclosure Action, they are "nonetheless entitled to assert collateral estoppel against Plaintiff[s] under the doctrine of non-mutual estoppel, which 'allows a defendant who was not party to the previous litigation to rely on . . . collateral estoppel to bar . . . issues raised in subsequent litigation, assuming the issue was fully and fairly litigated in the first instance.'" *Thomas*, 2025 WL 2588749, at *13 (quoting *Ranasinghe v. Kennell*, No. 16-cv-2170, 2017 WL 384357, at *3 (S.D.N.Y. Jan. 25, 2017), *aff'd*, 718 F. App'x 82 (2d Cir. 2018)).

Applying these standards, the Amended Complaint's claims against LOGS and the Bank Defendants are barred by collateral estoppel based on the Foreclosure Action. As discussed *supra*, the claims in the Amended Complaint are predicated on allegations that BNY did not have legal title to the Property and therefore effectively constitute a challenge to the Judgment of Foreclosure and Sale. The first factor of collateral estoppel, that "the identical issue necessarily was decided in the prior action and is decisive of the present action," is satisfied. To resolve these claims, the Court would need to review the validity of the Mortgage—a determination necessarily made by the State Court in the Foreclosure Action when it entered the Judgment of Foreclosure and Sale. Though Plaintiffs frame the claims in this action under the federal consumer protection laws, the underlying basis of those claims is that the debt is invalid.[13] For example, the Amended Complaint asserts its consumer protection claims based on failure "to validate the debt and for a money audit trail to determine proper liabilities of the interested

---

[13] This analysis also applies to the Amended Complaint's claims for injunctive and declaratory relief. Clearly these claims seek to undo the Judgment of Foreclosure and Sale. (*See* Discussion Section II.A.i.1, *infra*.) Furthermore, the Amended Complaint does not include a separate cause of action for injunctive or declaratory relief. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action").

parties." (Am. Compl. ¶ XVII.) Additionally, the Amended Complaint asserts that Defendants were "conducting an unlawful attempt at collection." (*Id.* ¶ XXVI.) Yet, Plaintiffs' claims regarding the validity of the debt, and thus, the right to collect on that debt, were decided by the State Court in the Foreclosure Action.

Regarding the second factor for collateral estoppel, Plaintiffs have not shown that Harper lacked a full and fair opportunity to litigate those issues in the Foreclosure Action. *See Khandhar*, 943 F.2d at 247. Indeed, as addressed in Discussion Sections II.A.i.2 and II.A.ii *supra*, Harper questioned the validity of the mortgage and BNY's right to foreclose in several pre- and post-judgment filings in the Foreclosure Action. *See Harper*, Index No. 024566/2007, Cross-motion to Dismiss, Dkt. No. 46; Motion for Renewal with Dismissal, Dkt. Nos. 136–143, 148; Notice of Plaintiff in Default and Counterclaim, Dkt. No. 149. In the Foreclosure Action, Judge Whelan granted Harper a 30-day stay to obtain new counsel, and Harper chose not to do so or to seek an extension of the stay, opting instead to have Whyte-Bey submit filings on her behalf; Harper filed numerous motions challenging the validity of the mortgage and BNY's right to foreclose, including her motion to cancel the notice of pendency, cross-motion for dismissal, and additionally filed post-judgment "motions for renewal with dismissal" and "emergency motion to compel"; Harper additionally filed briefs opposing each of BNY and LOGS' motions, and the State Court ruled on each of those motions.

Thus, collateral estoppel precludes Harper from re-litigating her challenges to the making, validity, or enforcement of the underlying Mortgage—even though the Amended Complaint in this action attempts to characterize these claims as made under the consumer protection laws. *See Rutty v. Esagoff*, No. 17-cv-1485, 2017 WL 2178432, at *2 (E.D.N.Y. May 17, 2017) (finding that "[b]y virtue of the doctrine of collateral estoppel, plaintiff is precluded

34

from claiming that the foreclosure was improper . . . and the myriad other factual issues" that were adjudicated in the foreclosure proceeding in connection with claims under the FDCPA and state law); *Caldwell*, 701 F. Supp. 2d at 351 (barring plaintiff's claims where they would require a federal court to revisit issues already necessarily decided in state court); *see also Fallica v. Bank of Am.*, 22-cv-1297, 2023 WL 4824434, at *11 (E.D.N.Y. June 1, 2023) (finding RICO and state law claims barred by collateral estoppel where such claims were based on the validity of the mortgage and defendants purported fraudulent activity in ratifying the mortgage—all issues that plaintiff should have raised in the foreclosure action), *reconsideration denied*, No. 22-cv-1297, 2023 WL 5237365 (E.D.N.Y. Aug. 15, 2023).

Accordingly, the Amended Complaint's claims against LOGS and the Bank Defendants are barred by collateral estoppel and are therefore dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B.  Insufficient Service of Process[14]

"On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010). The Bank Defendants and LOGS move to dismiss the claims against them under Rule 12(b)(5) because Plaintiffs have failed to meet their burden to demonstrate proper service of the Amended Complaint pursuant to Rule 4 or the relevant rules of the New York CPLR. (*See* Bank Mot. at 21–25; LOGS Mot. at 20–22.)

---

[14] In opposition to the Defendants' Motions to Dismiss the Amended Complaint, Plaintiffs contend that they were not served with Defendants' Motion papers. (Opp'n at 6–7.) However, Defendants already refuted this argument by providing proof of service when Plaintiffs moved for a default judgment based on Defendants' alleged failure to plead or otherwise defend Plaintiffs' action. (*See* ECF Nos. 29, 32–34.) The Court denied Plaintiffs' motion on June 11, 2025. (Elec. Order, June 11, 2025.)

As discussed below, the Court agrees. Plaintiffs filed the Amended Complaint on May 1, 2025. Because proper service of the Amended Complaint was not completed within 90 days, as required by Rule 4(m), the claims against the Bank Defendants and LOGS are dismissed for insufficient service of process under Rule 12(b)(5).

### i. Service on the Bank Defendants

Federal Rule of Civil Procedure 4(h) governs service of process on a corporate entity, including corporations, partnerships, and associations. Pursuant to Rule 4(h), a corporate entity can be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). Alternatively, a corporate entity can be served "in the manner prescribed by Rule 4(e)(1) for serving an individual," which allows service in accordance with the law of the state where the district court is located—here, pursuant to New York law.[15] Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1).

---

[15] Under New York law, personal service on a corporation can be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y.C.P.L.R. § 311(a)(1). A plaintiff may also serve a corporation by "[p]ersonally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee," or by "[e]lectronically submitting a copy of the process to the department of state together with the statutory fee." N.Y. Bus. Corp. Law § 306(b)(1).

Similarly, personal service on a limited liability company can be made under New York Law by "delivering a copy personally to (i) any member of the limited liability company in this state, if the management of the limited liability company is vested in its members, (ii) any manager of the limited liability company in this state, if the management of the limited liability company is vested in one or more managers, (iii) to any other agent authorized by appointment to receive process, or (iv) to any other person designated by the limited liability company to receive process, in the manner provided by law for service of a summons as if such person was a

The Bank Defendants contend that service of both the original Summons and Complaint as well as the Amended Summons and Amended Complaint was improper as neither party was served pursuant to Rule 4(h)(1)(B) or N.Y.C.P.L.R. §§ 306(b)(1), 311(a), or 311-A. (*See* Bank Mot. at 23–25; Bank Reply at 9–10.)

With respect to BNY, a corporation, the Affidavit of Service completed by Rodney Adu on March 24, 2025 indicates that Adu served BNY "personally" with the original Summons and Complaint on March 24, 2025 at a New York address. The Affidavit contains the handwritten name "Thalia Snead" but does not indicate whether Snead was the individual who was actually served; nor does it include any description of the individual served or indicate why the individual (whether Snead or someone else) was authorized to receive service on behalf of BNY. (*See* Mar. 24, 2025 Aff. of Serv., ECF No. 8 at 1; Bank Mot. at 24.) Such service is insufficient under federal and state law. *See Tung v. Hemmings*, No. 19-cv-5502, 2021 WL 4147419, at *3 (E.D.N.Y. Sept. 13, 2021) ("Courts in this circuit consistently decline to find affidavits adequate to establish service on a corporate defendant when the individual served is not identified and the affidavit fails to explain the basis for the affiant's conclusion that the individual served was authorized to accept service for the corporation."). "The burden is on plaintiff[] to show a basis for inferring that the defendant has authorized a particular person to accept service of process on its behalf." *DeMott v. Bacilious*, No. 11-cv-6966, 2012 WL 601074, at *7 (S.D.N.Y. Feb. 24, 2012); *see also Burton*, 738 F. Supp. 3d at 298 (finding service was improper because affidavit of

---

defendant." N.Y.C.P.L.R. § 311-A(a). Service can also be made by "(1) [p]ersonally delivering to and leaving with the secretary of state or his or her deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee," or by "(2) [e]lectronically submitting a copy of the process to the department of state together with the statutory fee." N.Y. Ltd. Liab. Co. Law § 306(b)(1).

service did not explain how the individual served was authorized to accept service); *Kitsis v. Home Attendant Vendor Agency, Inc.*, No. 15-cv-6654, 2016 WL 8234676, at \*2 (E.D.N.Y. Dec. 12, 2016) (proof of service was insufficient where affidavit provided only the name of a person "located at the front desk of [the corporate] defendant's establishment" but "no further information as to the person who was served or why service on that person was effective as to the corporate defendant"), *report and recommendation adopted*, 2017 WL 563971 (E.D.N.Y. Feb. 10, 2017).

As to Carrington, an LLC, Plaintiffs' Affidavit of Service indicates that the original Summons and Complaint was served by ground mail on March 25, 2025 to an address in California, but does not identify the person designated to receive service or their affiliation with Carrington. (*See* Mar. 24, 2025 Aff. of Serv. at 5.) Service by mail alone is not permitted under the relevant federal and state rules and therefore such service was deficient. *See* Rule 4(h)(1)(B); N.Y.C.P.L.R. § 311-A(a); N.Y. Ltd. Liab. Co. Law § 306(b)(1); *see also Sw. Marine & Gen. Ins. Co. v. Hudson Excess Ins. Co.*, No. 25-cv-6048, 2026 WL 268410, at \*1 (S.D.N.Y. Feb. 2, 2026) (noting that neither the Federal Rules nor New York's CPLR "permit service [of a summons and complaint] by mail alone"). Service is also improper because the Affidavit does not identify any individual authorized to receive service. *See* Rule 4(h)(1)(B); N.Y.C.P.L.R. § 311-A(a); N.Y. Ltd. Liab. Co. Law § 306(b)(1).

Moreover, after being made aware of their deficient service of the original Summons and Complaint in the Bank Defendants' pre-motion letter filed on April 11, 2025 (*see* ECF No. 16), Plaintiffs made no attempt to rectify their deficient service when they filed their Amended Complaint on May 1, 2025. Plaintiffs' May 5, 2025 Affidavit of Service indicates that Rodney Adu served BNY and Carrington with the Amended Summons and Complaint on May 2, 2025

via United States Postal Service mail to their counsel of record.[16] (*See* May 2, 2025 Aff. of Serv., ECF No. 26.) Plaintiffs again failed to effect service because, as discussed *supra*, service by mail alone is insufficient. Additionally, "[s]ervice of process on an attorney not authorized to accept service for his client is ineffective." *Mhina v. Bank of Am., N.A., Corp.*, No. 23-96-cv, 2023 WL 6873045, at *2 (2d Cir. Oct. 18, 2023); *see also Yaxin Jing v. Angel Tips, Inc.*, No. 11-cv-05073, 2013 WL 950585, at *3 n.1 (E.D.N.Y. Mar. 11, 2013) ("[S]imply serving in the capacity of attorney, or representing the client previously, does not render the attorney an agent for service of process"). According to the Bank Defendants, their counsel never consented to receive service of the May 1, 2025 Amended Complaint, nor did they waive service. (Bank Mot. at 24.) It is Plaintiffs' burden to prove that they properly served Defendants. *See Burda,* 417 F.3d at 298–99. Because Plaintiffs have not submitted any information or documentation to establish that the Bank Defendants were served properly, Plaintiffs did not properly effect service on these Defendants.

Notably, in opposition to the instant motion, Plaintiffs do not contest that service of the Amended Summons and Complaint was improper; instead, they claim that any service deficiency was cured by constructive notice of the Amended Complaint via its filing on ECF. (Opp'n at 15.) However, courts in this Circuit have continuously rejected that argument, concluding that a plaintiff cannot accomplish service under Rule 4 simply by filing a document on ECF. *See Shum v. JILI Inc.*, No. 17-cv-7600, 2022 WL 17403608, at *3 (E.D.N.Y. Dec. 2, 2022) (collecting cases). "Even if a defendant eventually acquires actual notice of the lawsuit,

---

[16] Though the Affidavit of Service states that service upon the Bank Defendants was effectuated via "certified mail with signature receipt to the [defendant] and its counsel" (May 5, 2025 Aff. of Serv.at 1), the receipt attached to the Affidavit of Service notes that service was effectuated via USPS ground mail. (*Id.* at 4.)

actual notice alone will not sustain the service or subject a person to the court's jurisdiction when there has not been compliance with the prescribed conditions of service." *Bankers Trust Co. of California, N.A. v. Tsoukas*, 303 A.D.2d 343, 344 (N.Y. App. Div. 2d Dept. 2003).

Accordingly, because the Bank Defendants were not property served with the Amended Summons and Complaint, the Court dismisses the claims against the Bank Defendants due to insufficient service of process.

### ii.  Service on LOGS

"[S]ervice on a partnership is accomplished in federal court in the same manner as service on a corporation. That is, a plaintiff must comply with the procedures (as discussed above) under Rule 4(h)(1)(B)—entailing service upon an officer, agent, or party authorized to accept service—or follow state procedure." *Tung v. Deutsche Bank Trust Co.*, No. 19-cv-5445, 2022 WL 471907, at *6 (E.D.N.Y. Jan. 11, 2022) (citing *Redd v. Fed. Nat'l Mortg. Ass'n (Fannie Mae)*, No. 19-cv-1045, 2020 WL 1536596, at *4–5 (E.D.N.Y. Mar. 31, 2020) (dismissing complaint against limited partnerships and limited liability partnership where affidavits of service showed only that the process server mailed the summons and complaint to the defendants by certified mail)).

Pursuant to New York Law, service upon a limited partnership "shall be made by delivering a copy personally to any managing or general agent or general partner of the limited partnership in [New York]," or to any agent or employee authorized to receive service. N.Y.C.P.L.R. § 310-A(a). As is relevant here, N.Y.C.P.L.R § 310-A(c) provides that a limited-liability partnership may also be served pursuant to New York Partnership Law § 121-1505 which requires "personally delivering to and leaving with the Secretary of State or a deputy, or with any person authorized by the Secretary of State to receive service, at the office of the

Department of State in the City of Albany, duplicate copies of the process together with the statutory fee," or "[e]lectronically submitting a copy of the process to the department of state together with the statutory fee . . . ." N.Y. P'ship Law § 121-1505 (a)(1), (2).

Here, according to Plaintiffs' Affidavits of Service, the original Summons and Complaint as well as the Amended Summons and Complaint were served upon LOGS via ground mail. (*See* Mar. 24, 2025 Aff. of Serv. at 4; May 5, 2025 Aff. of Serv.) Under both Federal Rule 4(h) and N.Y.C.P.L.R. § 310-A, simply mailing the summons and complaint to LOGS is inadequate to constitute service. Accordingly, Plaintiffs have not properly effected service upon LOGS and the Court dismisses the claims against LOGS for insufficient service of process under Rule 12(b)(5).[17]

In sum, Plaintiffs have failed to make a *prima facie* showing that they properly effected service upon the Bank Defendants and LOGS under Rule 4 or any of the applicable New York state law provisions. Nevertheless, out of an abundance of caution, this Court will address the Bank Defendants and LOGS' remaining defenses.

### C. Failure to State a Claim

The Bank Defendants and LOGS move to dismiss the claims against them on the additional grounds that the Amended Complaint fails to state a cause of action against them pursuant to Rule 12(b)(6). (*See* Bank Mot. at 11–21; LOGS Mot. at 17–19.) Notwithstanding the Court's dismissal of Plaintiffs' claims for lack of subject matter jurisdiction, insufficient service of process, and pursuant to the preclusion principles of res judicata and collateral estoppel, the

---

[17] Notably, Plaintiffs' Opposition to the instant motion does not address LOGS' argument that service upon it was improper. (*See generally* Opp'n.)

41

Court examines Defendants' arguments that the Amended Complaint's claims against the Bank Defendants and LOGS fail to state a cause of action for which relief may be granted.

The Court concludes that Plaintiffs' federal claims must be dismissed for failure to state a claim under Rule 12(b)(6).

### i.    42 U.S.C. § 1983

Plaintiffs' Section 1983 claim, which invokes Plaintiffs' due process rights, has no merit in light of the fact that neither the Bank Defendants nor LOGS are state actors or were otherwise acting under color of state law. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law."). Section 1983 imposes liability on, and creates a right of action against, anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. As non-state actors, the Bank Defendants and LOGS are not subject to liability under Section 1983, and therefore any such claim against them cannot proceed.

### ii.    Truth in Lending Act and Fair Credit Billing Act Claims

Congress enacted the Truth in Lending Act "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." 15 U.S.C. § 1601(a). "The TILA promotes this goal largely by 'imposing mandatory disclosure requirements on those who extend credit to consumers in the American market.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016) (quoting *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363 (1973)). By ensuring the "meaningful disclosure of credit terms," the TILA "protect[s] the consumer against inaccurate and unfair credit billing and credit card practices." *Poulin v. Balise Auto Sales, Inc.*,

647 F.3d 36, 39 (2d Cir. 2011) (citing 15 U.S.C. § 1601(a)). To this end, the TILA, 15 U.S.C. § 1638(a) ("Section 1638(a)"), and its implementing Regulation Z require that a creditor in a consumer transaction disclose "clearly and conspicuously in writing," *inter alia*, the identity of the creditor, the amount financed, the finance charge, and the annual percentage rate. *See* 15 U.S.C. § 1638(a); Regulation Z, 12 C.F.R. § 1026.17(a).

The TILA provides borrowers a private right of action against creditors that fail to make the statutorily required disclosures. *See* 15 U.S.C. § 1640. A plaintiff is required to bring a TILA claim within one year of the "date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 12–13 (2d Cir. 2018) (summary order) (affirming district court dismissal in light of expiration of one-year statute of limitations).

Construed liberally, the Amended Complaint appears to assert claims that Defendants violated the TILA and the FCBA, § 1666 *et seq*. First, the Amended Complaint vaguely alleges that "Defendant fail[ed] to disclose the pertinent finance charge information" in violation of the FCBA. (Am. Compl. ¶ CLXII.) It also asserts that "Plaintiff served [the Bank Defendants and LOGS] [an] Error Resolution Notice [u]nder 12 C.F.R. §1024.35 respectfully demand[ing] defendant to make a [c]orrection of billing errors pursuant to [the TILA], and more specifically, Part D of TILA, the Fair Credit Billing Act (FCBA) as codified in § 1666." (*Id.* ¶¶ CLVI.) According to Plaintiffs' allegations, Defendants "failed to provide a money audit trail which would have remedied the dispute as it related to plaintiff's real property." (*Id.* ¶¶ CLVII.)

The Amended Complaint's TILA claims fail to state a cause of action. Plaintiffs' allegations are vague and do not include any particular facts, such as identifying details about what billing errors occurred and when, or what information Defendants failed to disclose.

43

Additionally, Plaintiffs' claim that Defendants "fail[ed] to disclose the pertinent finance charge information" is untimely. (Am. Compl. ¶ CLXII.) Harper obtained the Mortgage loan in 2006—nineteen years prior to March 21, 2025.[18] "It is well-settled law that in 'closed-end credit' transactions [such as mortgages] . . . the 'date of the occurrence of violation' is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs." *Cardiello v. The Money Store, Inc.*, No. 00-cv-7332, 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001), *aff'd*, 29 F. App'x 780 (2d Cir. 2002). "Thus, a plaintiff may not bring suit for damages under TILA, in connection with a mortgage loan, more than one year after entering into that loan." *Latouche v. Well[s] Fargo Home Mortg. Inc.*, No. 16-cv-1175, 2017 WL 8776975, at *6 (E.D.N.Y. Aug. 25, 2017) (citation omitted), *report and recommendation adopted* (Nov. 9, 2017), *aff'd sub nom.*, 752 F. App'x 11 (2d Cir. 2018). Accordingly, Plaintiffs' TILA claim based on allegations that Defendants failed to disclose the pertinent finance charge is time-barred and therefore dismissed under Rule 12(b)(6).

Next, the Amended Complaint's allegations that Defendants violated the FCBA are unfounded. The FCBA, 15 U.S.C. §§ 1666-1666j, amended the TILA to protect consumers against unfair credit billing and credit card practices and imposes on creditors "requirements . . . for the correction of billing errors." *Am. Express Co. v. Koerner*, 452 U.S. 233, 234 (1981). A consumer invoking the FCBA must have notified the creditor of billing errors within sixty days of the creditor's transmission of the statement containing the alleged error. 15 U.S.C. § 1666(a). In turn, a creditor receiving such an inquiry must send a written acknowledgment within thirty

---

[18] Yet, the Amended Complaint incorrectly asserts that "Plaintiff brought this action within the one year of opening the credit account with defendant's as required by 15 U.S.C. 1640(e)." (Am. Compl. ¶ CLXI.)

days. *Id.* § 1666(a)(3)(A). The creditor has two billing cycles, or a maximum of ninety days after notification, to resolve the dispute. *Id.* § 1666(a)(3)(B).

Notably, the FCBA only applies to "open-end credit," such as a credit card or a revolving charge account that is "primarily for personal, family, or household purposes." 15 U.S.C. § 1602(i); *Abergel v. Santander Bank*, No. 19-cv-6535, 2019 WL 4141668, at *2 (S.D.N.Y. Aug. 30, 2019) (explaining that the FCBA "applies to 'open-end credit'"); *see also Evans v. Select Portfolio Servicing, Inc.*, No. 18-cv-5985, 2020 WL 5848619, at *11 n.10 (E.D.N.Y. Sept. 30, 2020) ("[A]n open-end credit transaction is one in which the creditor reasonably contemplates repeated transactions, and provides for a finance charge which may be computed from time to time on the outstanding unpaid balance, such as a credit card."). The FCBA does not cover closed-ended credit transactions like the Mortgage at issue here. *See Herrera v. Navient Corp.*, No. 19-cv-06583, 2021 WL 2815456, at *4 (E.D.N.Y. May 21, 2021); *Evans*, 2020 WL 5848619, at *11 n.10 ("A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage or car loan."). Accordingly, the FCBA does not apply to Harper's Mortgage, and the FCBA claim is therefore dismissed under Rule 12(b)(6).

### iii. *Fair Debt Collection Practices Act Claim*

Congress enacted the FDCPA "'to protect consumers from deceptive or harassing actions taken by debt collectors,' with the purpose of 'limiting the suffering and anguish often inflicted by independent debt collectors.'" *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 93 (2d Cir. 2012) (summary order) (internal citations omitted). The FDCPA proscribes "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and applies to foreclosure actions, which the FDCPA characterizes as

45

an "'attempt to collect a debt.'" *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 82 (2d Cir. 2018). FDCPA claims have a one-year statute of limitations. *See* 15 U.S.C. 1692k(d); *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 158 (E.D.N.Y. 2007).

"An FDCPA claim based on a foreclosure action accrues when the action is filed." *Gurevitch*, 2025 WL 642347, at *11. Further, "[t]he continued prosecution of a foreclosure . . . [action] is not a continuing violation under the FDCPA—if the same alleged misrepresentation is repeated in court filings, the claim accrues on the date of the initial representation." *Oliver v. U.S. Bancom*, No. 14-cv-8948, 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015). "[T]he statute of limitations on an FDCPA claim premised on the fraudulent filing of a debt-collection suit begins to run when the complaint is filed or when the debtor receives notice of the action, rather than on the filing of any individual documents within the lawsuit." *Weaver v. Boriskin*, No. 16-cv-00688, 2020 WL 13558738, at *3 (E.D.N.Y. Mar. 10, 2020).

Plaintiffs' FDCPA claim is barred by the one-year statute of limitations governing such claims. *See* 15 U.S.C. § 1692k(d); *see also, e.g., Sanchez v. Ehrlich*, No. 16-cv-8677, 2018 WL 2084147, at *3 (S.D.N.Y. Mar. 29, 2018). Plaintiff commenced the instant action on March 21, 2025, alleging that "Plaintiffs informed LOGS[] via certified mail that as acting counsel in the lower court for defendant [BNY] all unsettled issues of its client's failures to validate the debt and for a money audit trail to determine proper liabilities of the interested parties served as a breach of public law aspects of the Fair Debt Collection Practices Act." (Am. Compl. ¶ XVII.) As evident from the pleadings and discussed *supra*, Plaintiffs' FDCPA claim is premised on the filing and pursuit of the Foreclosure Action in State Court based on an allegedly invalid debt. (*Id.*) These claims are precluded by FDCPA's one-year statute of limitations. Here, the Foreclosure Action commenced on April 9, 2007—nearly eighteen years prior to the

commencement of the instant action. Because Plaintiffs' claim accrued as early as 2007, and no later than the date of the Judgment of Foreclosure and Sale on November 23, 2023, Plaintiffs' FDCPA claim is time-barred.

Accordingly, the Amended Complaint's FDCPA claim is dismissed under Rule 12(b)(6).

### iv.   Fair Credit Reporting Act Claim

The Fair Credit Reporting Act regulates the conduct of consumer reporting agencies, users of consumer reports, and entities that furnish information to consumer reporting agencies. *See Redhead v. Winston & Winston, P.C.*, No. 01-cv-11475, 2002 WL 31106934, at *3 (S.D.N.Y. Sept. 20, 2002) (citing 15 U.S.C. § 1681, et seq.). "Section 1681s-2 of the FCRA sets forth an information furnisher's responsibilities under the FCRA, delineating two separate categories of duties." *Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 98 (2d Cir. 2020). Those two categories are set forth in Sections 1681s-2(a) and 1681s-2(b). *Id.* at 98–99.

"Section 1681s-2(a) details a furnisher's responsibility to provide accurate information, including a duty to refrain from knowingly reporting inaccurate information, and to correct information discovered to be inaccurate." *Id.* However, Section 1681s-2 expressly limits the enforcement of obligations under Section 1681s-2(a) to government agencies or officials. *See* 15 U.S.C. § 1681s-2(d). Accordingly, the Second Circuit has held that "there is no private [cause] of action for violations of Section 1681s-2(a)." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012); *see also Sprague*, 969 F.3d at 98–99.

Section 1681s-2(b), on the other hand, does provide a private right of action. "Section 1681s-2(b) outlines a furnisher's duties following a dispute regarding the completeness or accuracy of a consumer's credit report." *Sprague*, 969 F.3d at 99. These duties are triggered once a furnisher "receiv[es] notice" of a dispute. *Id.*; 15 U.S.C. § 1681s-2(b)(1). However, "[t]he

statute is clear that the notice triggering these duties must come from a [credit reporting agency], not the consumer." *Sprague*, 969 F.3d at 99; *see also Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 77–78 (W.D.N.Y. 2018) ("Section 1681s-2(b) 'governs the furnishers' duty once notice is received *from a credit reporting agency* that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency.'" (emphasis in original) (quoting *Redhead*, 2002 WL 31106934, at *4)). Once a credit reporting agency has notified a furnisher about a dispute as to the accuracy of information, the furnisher must conduct an investigation and report the results to the agency. *Matheson v. Ocwen Federal Bank FSB*, No. 1:05-cv-02747, 2008 WL 11413560, at *7 (E.D.N.Y. June 18, 2008). Significantly, under § 1681s-2(b), a furnisher is *only* required to conduct an investigation concerning the disputed information following the receipt of notice from a credit reporting agency. *See* 15 U.S.C.§ 1681s-2(b)(1); *see also Sprague*, 969 F.3d at 99 ("Section 1681s-2(b) is not implicated simply because a consumer contacts a furnisher . . . regarding inaccuracies in her credit report."); *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012) ("Under § 1681s-2(b), a defendant has no duty to investigate a credit dispute unless defendant received notice of the dispute from a consumer reporting agency." (brackets omitted)). Thus, "[t]o state a claim under § 1681s-2(b)(1), a consumer must show that (1) a furnisher received notice of a credit dispute from a credit reporting agency (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Ngambo v. Chase*, No. 20-cv-2224, 2020 WL 1940553, at *3 (S.D.N.Y. Apr. 22, 2020) (brackets omitted). "The cornerstone of a claim under 15 U.S.C. § 1681s-2(b) is that the subject information was inaccurate; if the information was not inaccurate, there can be no FCRA violation." *Tescher v. Experian Info. Sols., Inc.*, No. 21-cv-02266, 2022 WL 564048, at *6 (S.D.N.Y. Feb. 23, 2022).

The Amended Complaint appears to assert a FCRA claim based on allegations that because of Defendants' actions, Harper was "deprived" of the "right[] to not be include[ed] in inaccurate reporting by a Credit Reporting Agency." (Am. Compl. ¶ CLXVI.) In support of this claim, Plaintiffs attach to their Amended Complaint a "proof of service" of the "Debt Validation Audit Request[s]" they mailed to BNY and three credit reporting agencies (Experian, TransUnion Consumer Solutions, LLC and Equifax, Inc.) on December 5, 2024. (*See* Am. Compl., ECF No. 24 at 167–170.)

However, critically, the Amended Complaint fails to allege that any of the Defendants received notice of a credit dispute *from a credit reporting agency*. Rather, the Amended Complaint alleges that the Bank Defendants and LOGS received notice of a credit dispute from Harper—the consumer. (*See* Am. Compl. ¶ CLXVIII; *id.* ECF No. 24 at 137–170.) Such allegations are insufficient to support a Section 1681s-2(b) claim. *See Sprague*, 969 F.3d at 99; *see also*, *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012) ("Where a consumer shows only that the furnisher received notice of the dispute from the consumer, but not from a credit reporting agency, no claim is stated." (collecting cases)).

Accordingly, the FCRA claim is dismissed under Rule 12(b)(6).

### D.  State Law Claims

In the absence of subject matter jurisdiction, the Court may not exercise supplemental jurisdiction over the remaining causes of action for negligence and intentional infliction of emotional distress under New York common law. *See Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) ("[A] district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction. It follows that when a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction pursuant to Rule

12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims."); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction.").

However, in the event this Court had jurisdiction over Plaintiffs' claims, having determined that Plaintiffs' federal claims do not survive Defendants' motions to dismiss, the Court concludes that retaining jurisdiction over Plaintiffs' state law claims is unwarranted. *See* 28 U.S.C. § 1367(c)(3) (A district court "may decline to exercise supplemental jurisdiction over a claim [where it] has dismissed all claims over which it has original jurisdiction . . . ."). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law . . . [I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Accordingly, Plaintiffs' state law claims are dismissed.

### III.    Leave to Amend

Although Plaintiff did not request leave to amend, the Court may grant such leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend] when justice so requires."). However, a district court may deny

50

leave to amend when an "amendment would be futile because the problem with the claim 'is substantive . . . [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-cv-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alteration in original)).

Applying these standards, any amendment of the Amended Complaint would be futile. There are no additional factual allegations Plaintiffs could offer that would cure the substantive defects in their claims. Accordingly, Plaintiffs are denied leave to file a second amended complaint.

## CONCLUSION

For the reasons discussed above, Defendants' Motions to Dismiss the Amended Complaint (ECF Nos. 28, 30, 31) are granted and resolved as follows.

First, Judge Whelan's Motion is granted pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because the claims against him are barred under Eleventh Amendment immunity and judicial immunity. In light of the application of judicial immunity, these claims are dismissed with prejudice.

Second, the Bank Defendants' Motion is granted under Rule 12(b)(1) because the Court lacks subject matter jurisdiction over the claims by application of *Rooker-Feldman*. In the alternative, to the extent that this Court has jurisdiction, these claims are dismissed with prejudice under Rule 12(b)(6) as barred under the doctrines of res judicata and collateral estoppel.

Third, LOGS' Motion is granted under Rule 12(b)(1) because the Court lacks subject matter jurisdiction over the claims by application of *Rooker-Feldman*. In the alternative, to the

51

extent that this Court has jurisdiction, these claims are dismissed with prejudice under Rule 12(b)(6) as barred under the doctrine of collateral estoppel.

In light of these rulings, all federal claims against Judge Whelan, the Bank Defendants, and LOGS are dismissed. Because there are no viable federal claims, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(c). These claims are therefore dismissed without prejudice.

The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiffs at their address of record and to note such mailing on the docket. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
April 30, 2026

 */s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge